WEST END TOWN COMPANY v. F. B. GRIGG ET AL.

No. 882. Decided March 26, 1900.

**1. Jurisdiction of Supreme Court—Fact and Law—Homestead.**

A conclusion of law by a trial court, that, from certain facts found, the property in question was homestead, will not be considered a conclusion of fact, but will be reviewed by the Supreme Court as a question of law. (P. 456.)

**2. Homestead—Intention to Make Home in Future.**

The intention of the owners to make certain property their homestead at some future time did not make it such. (P. 456.)

**3. Same—Contract to Build Residence—Mortgage.**

A contract by the owners of a lot to construct thereon a residence for their occupancy, designated it as their homestead from that time, but did not render void a mortgage for the cost of building imposed as a part of the transaction by which such homestead designation was effected. (P. 457.)

**4. Practice in Supreme Court—Argument on Motion for Rehearing.**

It being contrary to its practice to hear oral argument on a motion for rehearing, the Supreme Court, in this case, on showing by counsel for the motion that they had been, by the court's announcement, precluded from arguing, on the former hearing, the point on which the case was decided, granted the motion for the purpose of hearing such argument. (P. 458.)

ERROR to the Court of Civil Appeals for the Fourth District, in an appeal from Bexar County.

On motion for rehearing by defendants in error rehearing was granted to permit oral argument, in accordance with the written opinion published herewith; but after argument the court adhered to its original rulings without further written opinion.

*Denman, Franklin, Cobbs & McGown,* for plaintiff in error.—Under article 16, section 50, Constitution of 1876, a mortgage upon a homestead given to secure a debt contracted for improvements thereon is valid, provided the work and material are contracted for in writing with the consent of the wife given in the same manner as is required in making a sale of the homestead.

These requirements are met in this case. The consent of Mrs. Grigg to the contract with the town company whereby it was to furnish the work and material, is evidenced by her deed to the company, properly acknowledged. The form of the contract or the number of papers executed by the parties at the time is immaterial. The legal effect of the entire transaction, that is to say, the deed from Grigg and wife to the town company, and the reconveyance, and the execution of the notes, and the retention of the vendor's lien, all done in consideration of the agreement on the part of the town company to furnish the labor and material necessary to construct the dwelling, and the contract made with W. S. Hardy to construct the same and receive his pay from the West End Town Company, is to make the transaction a mortgage whereby a contract lien is given upon the premises to secure work and material for the construction of the dwelling. It is the same as the transaction set out in the Everhart case, infra.

By an instrument properly acknowledged by Mrs. Grigg, Grigg and his wife conveyed the property to the town company. This deed, under all of our decisions, is a mortgage, because it was not a real sale. Its consideration was the agreement on the part of the West End Town Company to pay for the work and material, and it was made before the work and material were furnished.

A suit based upon that deed as a mortgage could not be defeated by the plea of homestead, for the requirements of the Constitution had been

fully met and complied with. But to emphasize the nature of the deed and the transaction and at the same time, as a part of the very transaction between the parties, a reconveyance was made by the West End Town Company to Grigg and his wife and their notes taken for the money used by the West End Town Company in paying for the work and material used in constructing the house, and in that conveyance a lien is retained upon the property to secure a repayment of this money. The entire transaction shows a strict compliance with the constitutional requirements. The facts in this case we think come clearly within the following decisions: Lippencott v. York, 86 Texas, 281; Bank v. Campbell, 46 S. W. Rep., 845; Loan Co. v. Everheart, 44 S. W. Rep., 885; Loan Co. v. Edwards, 34 S. W. Rep., 193; Luzenburg v. Loan Assn., 29 S. W. Rep., 238; Walters v. Loan Assn., 29 S. W. Rep., 52.

We have treated the foregoing assignments as though there was no error in the court's finding that the lots in controversy constituted the homestead of F. B. Grigg and his wife at the time. We do not believe that the facts justify this conclusion under the decisions of the courts. We therefore submit the following: The trial court erred in its second conclusion of law in holding that the lots in controversy were the homestead of Grigg and wife at the time they executed the vendor's lien notes sued upon by the West End Town Company. Mullins v. Looke, 8 Texas Civ. App., 142; Wolf v. Butler, 8 Texas Civ. App., 469; Collier v. Betterton, 8 Texas Civ. App., 483.

*Lewy & Sehorn,* for defendants in error.—In order to fix and foreclose a lien upon the homestead for work and material used in improvements thereon, there must be an express written contract, given in the same manner as is required in making a sale and conveyance of the homestead. No lien can be fixed and no foreclosure had upon the homestead by an implied written contract, or by an express oral contract. Lippencott v. York, 86 Texas, 281; Lignoski v. Crooker, 86 Texas, 327; Bosley v. Pease, 86 Texas, 294; Bank v. Campbell, 46 S. W. Rep., 845; Loan Co. v. Everheart, 44 S. W. Rep., 885; Loan Co. v. Edwards, 34 S. W. Rep., 193; Paschall v. Loan Co., 47 S. W. Rep., 98; Luzenburg v. Loan Assn., 29 S. W. Rep., 238; Walters v. Loan Assn., 29 S. W. Rep., 52.

There are but two questions in this case: Can a lien be fixed on a homestead for work and material used in improvements made thereon, without the wife joining in the contract for such work and material and acknowledging the same as required by the Constitution of this State? To answer that question in the affirmative from the facts in this case, this court would be compelled to say that an implied lien without the wife's joining in the written contract would be sufficient to fix just such a lien. It occurs to us that the language of the Constitution itself repels such a construction. Article 16, section 50, of the Constitution provides, that "The homestead of a family shall be and is hereby protected from forced sale for the payment of all debts, except for the purchase money thereof, or a part of such purchase money, the taxes due thereon,

or for work and material used in constructing improvements thereon. and in the last case only when the work and material are contrated for in writing, with the consent of the wife, given in the same manner as is required in making a sale of the homestead." In order then to fix a lien upon a homestead for work and material used in constructing improvements thereon, the section of the Constitution above quoted demands, first, a contract in writing for the work and material used on such homestead; second, the signature and acknowledment of the wife to the written contract. We think that the language of the Constitution means what it declares in such an emphatic manner, and is capable of no other construction; and in order to emphasize this provision, the Constitution further declares in emphatic terms, "No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the husband alone or together with his wife."

Again, we hold that in order to fix a lien upon the homestead in this character of case, it must be by express contract, and not by an implied contract. In other words, no lien upon the homestead can be enforced by implied lien. As said by Judge Stayton in Lippencott v. York, 86 Texas, 282, "That by express contract the husband and wife, complying with the requirements of the Constitution, can give a lien," etc. So in the case of Lignoski v. Crooker, 86 Texas, 327, Judge Stayton says: "The instruments on which plaintiff's and interveners base their respective rights, upon their faces purport to give express liens. * * * The liens which they seek to enforce are liens arising from express contract, and not the statutory liens given to persons who furnish material to make improvements." So likewise in the case of Bosley v. Pease, 86 Texas, 294, Chief Justice Stayton uses the following language: "It is thus shown that the instrument was one giving an express lien on the property on which improvements were to be made, to secure value of labor and material expended in making them."

In support of their motion for rehearing counsel for defendant in error also cited and discussed: Cameron v. Gebhard, 85 Texas, 610; Swope v. Stantzenberger, 59 Texas, 387; Barnes v. White, 53 Texas, 628; Gardner v. Douglass, 64 Texas, 77; Franklin v. Coffee, 18 Texas, 413; Stone v. Darnell, 20 Texas, 11; Brooks v. Chatham, 57 Texas, 31; Fort v. Powell, 59 Texas, 321; Edwards v. Fry, 9 Kan., 425; Neal v. Coe, 35 Iowa, 407; Ratcliff v. Call, 72 Texas, 491; Freiberg v. Walzem, 85 Texas, 264; Watkins v. Davis, 61 Texas, 414.

BROWN, Associate Justice.—The West End Town Company sued Grigg and wife on a number of notes alleged to be for the purchase money of two lots described in the petition. Defendants set up that the two lots constituted their homestead, and that they conveyed them to plaintiff to secure the payment of the debt represented by the notes sued upon, which was contracted for the construction of a residence upon the

lots. The pleadings raised the issues presented by the following conclusions of fact, filed by the judge of the District Court, before whom the case was tried without a jury:

"From the evidence introduced upon the trial of this cause, I find as follows:.

"1. That on June 16, 1890, F. B. Grigg and Hattie M. Grigg, his wife, owned lots 28 and 29 in block 7 of the West End Town Company's first addition to the city of San Antonio, Texas, and they had no other real estate. These lots were purchased for the purpose of a home for Grigg and wife.

"2. At that time, said lots were vacant and unimproved lots.

"3. F. B. Grigg and his wife desired to erect for themselves a dwelling upon said lots, and to this end they made application to the West End Town Company for a loan of sufficient money to erect said dwelling, and were informed by the company that it could not make a loan to them.

"4. Afterwards, upon their request, the company agreed that if Grigg and his wife would transfer the property to the West End Town Company, it would have the dwelling erected upon the lots, and then reconvey the lots with the dwelling thereon to F. B. Grigg and wife for the costs of said dwelling, and would retain a vendor's lien upon the property to secure the repayment to it of the cost of building said house.

"5. I find that in pursuance of said agreement, on the 16th day of June, 1890, by a deed duly acknowledged by F. B. Grigg and Hattie M. Grigg (the acknowledgment being taken in the manner required by the statutes and Constitution when the wife joins in the conveyance of her homestead), conveyed the above described property to the West End Town Company in consideration of the agreement on the part of the West End Town Company to erect said dwelling.

"6. I find that at the same time, June 16, 1890, the deed was made, a contract was made with the consent of the West End Town Company by said F. B. Grigg with W. S. Hardy and others for the construction of said dwelling at the stipulated price of $3600, the money to be paid Hardy for constructing said house by the West End Town Company.

"7. I find that at the same time and as part of the same transaction, the West End Town Company reconveyed the said lots to F. B. Grigg and his wife, Hattie M. Grigg, the consideration being the notes herein sued upon, which notes were executed and signed as stated in the petition, the principal of which was made up of said contract price and the interest on each note from its date to its maturity; the deed and the notes retaining a vendor's lien to secure said notes.

"8. I find that the execution of said deeds and the contract with Hardy constituted one transaction, and that thereafter and in accordance with his contract, W. S. Hardy did construct the dwelling upon said property.

"9. I find that for the work done by him and the material furnished by him in constructing said dwelling, the West End Town Company

paid to the said W. S. Hardy the contract price in installments, said installments being determined by the voucher of J. Riely Gordon, the architect, which vouchers, when presented to the treasurer of the West End Town Company, were paid direct to Hardy.

"10. I find that no part of said money was paid to F. B. Grigg or to his wife, Hattie M. Grigg, but that the same, under the arrangement above set forth, all went into the work and labor and material used and incident to the construction of said dwelling house.

"11. I find that the labor and material which went into the construction of said house were furnished upon the said obligation of the West End Town Company to pay for the same and not upon the credit of Grigg and his wife.

"12. I find that F. B. Grigg is now indebted upon said vendor's lien notes to the West End Town Company in the sum of ———— dollars.

"Conclusions of Law.—From the foregoing facts, I conclude as follows:

"1. That the plaintiff is entitled to recover of the defendant, F. B. Grigg, the principal, interest and attorneys' fees due upon the note sued upon in this case, amounting to eight thousand six hundred eighty-eight and 79-100 dollars ($8688.79).

"2. I conclude that said two lots were the homestead of the said Grigg, and that the plaintiff is not entitled to a foreclosure of its lien upon the property described in its petition."

The court refused to foreclose plaintiff's lien upon the ground that the property sought to be subjected was the homestead of the defendants in error and not subject to sale for the debt sued upon, which ruling plaintiff in error attacks, because the facts found by the court show that no homestead right existed at the time the lien was created upon the property. The trial judge did not express a conclusion of fact as to the existence of the homestead right; but, as a conclusion of law, he decided that the property was the homestead of Grigg and wife at the time of the transaction and not subject to the lien. If the trial court had found, as a conclusion of fact from the evidence, that the homestead right existed at the time Grigg and wife entered into the contract which is evidenced by the several instruments made by the parties, then we would have been confined to the question,—is there any evidence upon which that conclusion could be based? But the conclusion of law expressed by the court will not be considered as a conclusion of fact, and we will proceed to determine whether the facts found made the property the homestead of Grigg and wife before and at the time of the transaction involved in this litigation. Edwards v. Chisholm, 6 S. W. Rep., 558.

The purpose of Grigg and wife to establish their homestead upon the lots at some future time, if able to erect a residence upon it, did not make it a homestead, but the making of the contract under which that residence was built, concurring with the intent to occupy it, fixed the homestead right from that time. Cameron v. Gebhard, 85 Texas, 610;

Swope v. Stantzenberger, 59 Texas, 389. In the case of Swope v. Stantzenberger, in which the facts were very similar to this case, it was claimed that the contract was void because the homestead right attached after the building contract was made but before it was filed for record; because, in the meantime, preparation had been made for other improvement on the property, in anticipation of using it as a homestead. This court said: "Whatever may be the rule, as between the mechanic and creditors of the owner, as to the time when the lien commences, as between the owner and the mechanic, in the determination of the question whether the land was or not the homestead so as to exempt it from the operation of the lien unless the wife should join in the execution of the written contract, it would seem that the time of the making of the contract is the true criterion. If, at that time, it was not the homestead of the owner, then no subsequent act of his could have the effect of abrogating and destroying his contracts."

The agreement between Grigg and the builder for the erection of a residence upon the lots in question, with the notes of Grigg and wife to the West End Town Company for the price of the work, formed a contract for the improvement, and the conveyance of the lots by Grigg and wife to the plaintiff in error and the reconveyance to them constituted a mortgage to secure the notes. The instruments were all executed at the same time, and, when the contract for the building became binding, the lien of the mortgage to secure the notes became effective and attached to the lots in question. No homestead exemption existed prior to the last act by which the transaction was completed, but the intention to occupy continuing with Grigg and wife, the constitutional immunity from debts then arose in their favor as to future transactions, but did not invalidate the lien which had attached to the lots. Swope v. Stantzenberger, cited above. The effect of the judgment in this case is to hold that when the contract and mortgage took effect, therefrom arose a right in Grigg and wife which destroyed the lien that secured the notes. In other words, the negotiation was self-destructive, for, by its completion, it destroyed the lien upon which it rested. Such a proposition can not be sustained consistently with the uniform holding of this court, that a pre-existing lien is not affected by the subsequent acquisition of a homestead right in the property.

The facts found by the trial court clearly show that there was no homestead exemption in favor of Grigg and wife at the time this contract was made, and the trial court erred in refusing to enter judgment foreclosing the lien created by the mortgage. It is therefore ordered that the judgments of the District Court and of the Court of Civil Appeals be reversed and that judgment be here entered in favor of the plaintiff in error for its debt, with interest and costs, and also foreclosing its lien upon the property described.

*Reversed and rendered.*

ON MOTION FOR REHEARING..

GAINES, CHIEF JUSTICE.—This is a motion for a rehearing, coupled with a request, on part of counsel for defendants in error, to be permitted to argue the motion orally. The ground of the request is that from the proceedings at the hearing, counsel was led to believe that a discussion of the point upon which the court afterwards decided the case against him was unnecessary. It is true that counsel did not argue the question; but it was also true that he was admonished from the bench that if he was not thoroughly satisfied as to the correctness of the ruling of the court below, he had better discuss the point. We do not hear oral argument upon a motion for a rehearing; but we may grant a rehearing and open the case to an oral discussion upon any or all the points involved. Although the court does not feel that it is responsible for the course of counsel in declining to argue the question whether the property in controversy was a homestead or not at the time the lien was attempted to be created upon it, we grant the motion for a rehearing and will allow each side thirty minutes time in which to discuss orally that question.

Opinion delivered April 26, 1900.