## T. M. FERGUSON v. WALTER CONNALLY & CO.

Decided October 15, 1903.

**1.—Deed—Description—Extrinsic Evidence.**

When a deed contains no patent ambiguity in the description of the land intended to be described extrinsic evidence is admissible to identify the subject matter of the suit.

**2.—Homestead—Lien.**

When, as in this case, the agreement to include land in a lien to secure a debt was made before the land was acquired, and before the land was improved or occupied as a homestead, the lien thus created would prevail over the homestead right. It is a principle of our homestead law that all liens upon land upon which a homestead is established, which were created prior to the establishment of the homestead, are superior to the homestead claim.

Appeal from the District Court of Smith. Tried below before Hon. R. W. Simpson.

Appeal from the District Court of Smith.

*H. M. Whitaker* and *John C. Williams,* for appellant.

*Cain & Knox,* for appellee.

PLEASANTS, ASSOCIATE JUSTICE.—Appellees brought this suit to recover the amount due upon two notes executed by appellant, and to foreclose a lien alleged to have been given by appellant to secure said notes, upon real and personal property described in plaintiffs' petition.

The petition alleges that the defendant, for the purpose of securing said notes, executed and delivered to plaintiffs a chattel mortgage and deed of trust, by which he conveyed to them, for the purpose aforesaid, the gin machinery for the purchase money of which said notes were given, and also the parcel of land containing five acres or more upon which the defendant's gin should be erected, said tract of land being located at ——, in Walker County, Texas. The petition then alleges that said gin was located and constructed upon two tracts of land, one containing five and the other eight acres, situated in Walker County, the metes and bounds of said tracts being set out in full. Foreclosure of said lien is asked upon both of said tracts of land.

The defendant answered by general and special exceptions, general denial, and by special pleas setting up that the land upon which the lien was sought to be foreclosed was the homestead of himself and family.

The cause was tried in the court below without a jury and judgment rendered in favor of plaintiff for the debt sued for, and foreclosing the lien on the personal property and the tract of eight acres of land described in the petition. The trial court, at the request of defendant, filed the following conclusions of fact:

"On June 5, 1897, defendant ordered from plaintiff certain machin-

ery, consisting of engine boiler, gin, feeder, condenser, press, etc., thereafter mortgaged to plaintiff, and upon which plaintiff seeks herein to foreclose a mortgage lien. Attached to this order is the following writing:

"'Huntsville, Texas, June 5, 1897.—In addition to the deed of trust. on the machinery, as provided in my order, I will secure you further by a deed of trust to the land on which the gin will be located, not less than five acres and all buildings and improvements thereon. This is a part of attached order. (Signed)   T. M. Ferguson.'

"The original order for the machinery, among other things, provided for a deed of trust to be given on the machinery purchased to secure the payment of the purchase money.

"The defendant ordered the machinery shipped to Dodge, in Walker County, Texas, and it was understood by both parties that the gin was to be 'put up' at Dodge, said county and State, but defendant did not know himself at the time the order was given for the machinery where, in or near Dodge, the gin would be located. He was figuring on getting five acres from Mrs. Wilkerson across the railroad from where the gin was built, but had never said anything to her about it at the time he gave the order for machinery. After that he spoke to her and thought he was going to get it, but when he began hauling the timbers to erect the gin she 'backed out' and he procured a letter to be written to the New York and Texas Land Company for a piece of land containing eight acres at the town of Dodge, upon which to erect a gin, and obtained a promise of the land from them, and he then moved the gin timbers from the Wilkerson land over on the eight-acre tract; this was between the 12th and 15th of July.' Defendant began at once to erect a gin house.

"Defendant did not get a deed from the New York and Texas Land Company until July 19, 1898, about one year after the commencement of the construction of the gin house.

"Before defendant had obtained a promise from the New York and Texas Land Company as to the eight acres of land, he had contracted orally with Mrs. Tunis for four acres of land on a different headright, but adjoining the eight acres, and upon this piece of land he hauled some timbers preparatory to constructing a residence upon the land and moved into it in the fall of 1897 with his family; he afterwards found that his residence was not upon the Tunis land, and then he bought five acres from R. Roark which covered the land on which the residence was located and also the four acres from Tunis, and adjoining the eight-acre gin tract.

"Defendant owned no other land at time of purchase of this land, and was the head of a family.

"On July 19, 1897, the defendant had material on the eight acres of land with which to build the gin house, and the house was 'pretty near completion when the machinery arrived.' The machinery was on side track in Dodge at this time, July 19, 1897, and defendant on that

day executed the mortgage and deed of trust herein sued on, describing the property as follows:

" 'One 20 h. p. center crank Huntsville engine, one 20 h. p. Huntsville boiler with fixtures complete for engine and boiler, one right-hand 60-saw Winship gin feeder and condenser, one 5-in. screw Winship top cotton press, one 24-in. Strank's 'Queen of the South' corn mill, 1 Winship separator and fan connections, one counter shaft, one telescope pipe, and two wood elbows.

" 'Also the land on which the gin will be located, said parcel of land containing five acres or more, and all the buildings and improvements and said machinery are located and to be located at ——, in Walker County, Texas.'

"Defendant, after executing this instrument, unloaded and put the machinery in the house built on the eight acres of land hereinbefore referred to.

"There is remaining unpaid upon the purchase price for the machinery the sum of $—— and 10 per cent of said amount as collection fees."

These conclusions of fact are fully sustained by the evidence and are not attacked by any of the numerous assignments of error presented in appellant's brief.

Under appropriate assignments of error the appellant assails the judgment of the court below, first, upon the ground that the instrument by which the lien was attempted to be created was void because of insufficiency of the description of the land sought to be conveyed; and second, because the facts found by the trial court show that at the time said lien was given the land in controversy was appellant's homestead.

We think neither of these contentions is sound. The description in the deed considered in connection with the extrinsic evidence identifies with certainty the land intended to be conveyed. There is no patent ambiguity in the description contained in the deed, and such being the case, all the authorities hold that extrinsic evidence may be looked to in order to identify the subject matter of the contract.

The question of homestead is not free from difficulty, but we are of opinion that the trial court correctly held that appellant's homestead rights in the property were subordinate to appellees' lien. The appellant agreed when he ordered the machinery for his gin that appellees should have a lien upon the gin house in which said machinery should be placed, and the tract of land upon which same should be located. At that time appellant did not own the land on which he contemplated erecting his gin, and it was understood that he was to purchase land for that purpose. Prior to appellant's acquisition of this land he had purchased a five-acre tract with the intention of making his home thereon, and began preparations for building a house in which to live. The eight-acre tract upon which the gin was situated was purchased for the purpose of placing the gin thereon, in accordance with the agreement

between the parties, and while it adjoins the five-acre tract upon which appellant lives and became a part of his homestead, the agreement to mortgage said land having been made prior to its acquisition and use by appellant as a homestead, the lien created by said mortgage must be held superior to appellant's homestead claim. On the faith of appellant's agreement that he would purchase a tract of land on which to erect a gin and that appellees should have a lien thereon, they delivered to appellant the machinery which was placed by him in said gin. At this time appellees had no notice that appellant intended to make the land purchased under said agreement a part of his homestead, and if such intention existed, in view of the previous agreement it must be held that no homestead rights would attach to the land as against appellees' lien for the purchase money for the machinery placed in the gin located thereon. It is a well settled principle of our homestead law that all liens upon land upon which a homestead is established, which were created prior to the establishment of the homestead, are superior to the homestead claim.

It seems clear to us that appellees' lien which was evidenced by the mortgage executed upon the 19th day of July, 1897, relates back to the original agreement, June 5, 1897, and is therefore antecedent in time to any homestead claim which appellant can assert to the land in controversy.

We deed it unnecessary to consider the assignments of error in detail. The determination of the question above discussed disposes of all the that the judgment of the court below should be affirmed, and it is so ordered.

*Affirmed.*

Writ of error refused.