## TROUT et al. v. WICHITA STATE BANK & TRUST CO. et al. (No. 12164.)

Court of Civil Appeals of Texas. Fort Worth. Oct. 12, 1929.

Rehearing Denied Dec. 14, 1929.

Hoffman & Bruce, of Wichita Falls, for appellants.

Ralph D. Pittman, Harris & Martin, E. M. Mann, Mathis & Caldwell, J. E. Winegart, Wayland H. Sanford, Kilgore, Rogers & Montgomery, Weeks, Morrow, Francis & Hankerson, and Geo. T. Putty, all of Wichita Falls, for appellees.

PER CURIAM. The judgment heretofore rendered by this court on June 22, 1929, is hereby set aside, and the opinion of this court, filed on the same day, is hereby withdrawn, and the judgment this day rendered is a substitute for said original judgment, and all parties shall have the right to treat the substitute judgment as the original judgment for the same purposes and to the same extent as if said original judgment had never been rendered. And the substitute opinion now here filed shall be treated as the original opinion in the case.

It is further ordered that the motions for rehearing by the appellee Wichita State Bank & Trust Company and the Buell Lumber & Manufacturing Company be and the same are hereby sustained, to the extent and for the reasons shown in the opinion this day filed, and the motion for rehearing filed by appellee Brown is granted, for the reasons shown in the same opinion.

DUNKLIN, J. The Wichita State Bank & Trust Company, as plaintiff, recovered a judgment against L. E. Trout and wife, Ruby Trout, as defendants, for the principal, interest, and attorney's fees on a promissory note for the principal sum of $15,000, executed by those defendants in favor of Robert H. Brown as payee. Plaintiff was also decreed a foreclosure of a mechanic's lien on lot 9 in block 14 of the Country Club Estates addition to the city of Wichita Falls, Tex., as evidenced by a mechanic's lien contract executed by the defendants Trout and wife in favor of Robert H. Brown to secure the payment of the promissory note mentioned above. The note and mechanic's lien were both duly assigned and transferred by Brown to the plaintiff bank by written assignment and without recourse on Brown.

Robert H. Brown, the Buell Lumber & Manufacturing Company and several other parties who had furnished labor and material in the construction of the building were all made parties defendants in plaintiffs' suit for the purpose of foreclosing the mechanic's lien stipulated in the contract as against them, as well as against Trout and wife, who were the owners of the lot covered by the mechanic's lien contract.

The contract stipulated that Brown would "furnish all the labor and materials for, and to construct, erect, and complete upon the lands and premises hereinafter described in a good and workmanlike manner and in accordance with plans and specifications agreed upon between the parties and signed by them for the purpose of identification, the following improvements [describing them]," and that Trout and wife would pay Brown "the sum of $15,000 in accordance with the terms of one certain promissory note of the said parties of the first part of even date herewith, and payable to the said party of the second part, or order." Following that stipulation is a copy of the promissory note sued on by the plaintiff.

The case was tried before the court without a jury, and findings of fact and conclusions of law by the trial judge are in the record.

The defendant Brown alleged, in substance, that the written mechanic's lien contract and note executed in connection therewith did not represent the real contract entered into between himself and Trout for the construction of the improvements. It was alleged that prior to the execution of said instruments it was agreed between him and Trout that Brown should be employed merely as an overseer and agent for Trout to superintend the construction of the improvements, and as such agent for Trout he would buy such material and employ such labor, and also such subcontractors as might become necessary to construct the improvements according to the plans and specifications agreed upon, and that in consideration for the services to be so rendered by Brown, Trout agreed to pay for all material, labor, and subcontractors' bills, and as compensation for Brown's services as such agent and superintendent Trout agreed to pay him 10 per cent. of the cost of all labor and material used in the construction of the improvements.

It was further alleged that plaintiff bank was a party to that oral agreement, in that it bound itself as fiscal agent of Trout to advance the money necessary to pay for the construction of the improvements as the same proceeded, with the understanding between it and Trout that the latter would later execute a mechanic's lien in favor of the bank, and that the same would thereafter be negotiated to a financial company at Dallas.

The trial judge found the facts to be as alleged in that pleading, and gave effect in Brown's favor to the agreement so alleged as against plaintiff bank and Trout, to the exclusion of the written contracts upon which plaintiff's suit was based. The court further found that the bank advanced to Trout $15,000 in money, of which amount $13,497.22 was paid by Trout to Brown, but that Brown only paid out for labor and material used in such improvements $11,384.78.

Judgment was rendered in favor of plaintiff against Trout for the full amount of the note sued on, principal, interest, and attorney's fees, and for a foreclosure of the mechanic's lien in favor of the bank, and also decreeing and foreclosing a materialman's lien in favor of the Buell Lumber & Manufacturing Company for the sum of $364.00. Personal judgment was also rendered against Trout in favor of several other defendants who had furnished labor and material for the construction of the building against Trout, upon the theory that under the parol agreement pleaded and found by the court those items were incurred by Brown as agent for Trout, who accordingly was liable therefor as principal, but they were denied a mechanic's lien to secure the same. There were several other provisions in the judgment which will not be now noted, in view of the judgment of this court hereafter shown. This appeal has been prosecuted by L. E. Trout and Robert H. Brown.

There was neither pleading nor proof by any of the defendants that the execution of the written mechanic's lien contract and the promissory note executed by Trout and wife contemporaneously therewith was the result

of fraud, accident, or mistake. Nor was there any verified plea of failure of consideration, nor of non est factum; nor was there any ambiguity in either of those instruments. According to the pleading of Brown and the uncontroverted proof, before the house was finished further work of construction by Brown was abandoned by mutual consent of himself and Trout, leaving the house unfinished.

Error has been assigned to the action of the court in overruling the objections by the bank and Trout, to the testimony introduced to prove the alleged prior parol agreement between Brown, Trout, and the bank for financing the building of the house. The objection was upon the ground that such testimony was inadmissible, in that it tended to vary and contradict the mechanic's lien contract, and the note given in connection therewith. That issue is the principal question presented for our determination.

Brown and his codefendants, who were given the benefit of the ruling of the trial court, have cited in support thereof authorities to the same effect as the following quotation from 10 R. C. L. 1051:

"While evidence to vary the terms of an agreement in writing is not admissible, yet evidence to show that there is not an agreement at all is perfectly competent; it is permissible to show that a writing purporting to be a contract never came into existence as a contract, or has ceased to be a contract. However, there is some conflict among the authorities on the question whether parol evidence is admissible to show that a purported contract is a sham. By some courts it has been held that parol evidence is not admissible to show that a written contract, regular and complete on its face, was intended as a mere sham and was entered into for the purpose of deceiving some third person and inducing such third person to perform certain acts that he would not have performed except for the contract. But the weight of authority appears to be the other way."

They also cite 22 C. J. 1211; Bell v. Mulkey (Tex. Civ. App.) 7 S.W.(2d) 115; McCartney v. McCartney, 93 Tex. 359, 55 S. W. 310; Southern Advertising Co. v. Metropole Shoe Mfg. Co., 91 Md. 61, 46 A. 513. And for authorities to a like effect see Page on Contracts, vol. 4, §§ 2176, 2177, 2178, 2179.

We do not believe those authorities have any proper application here for the following reasons. In Brown's pleadings, setting up the parol agreement, following allegations of the parol agreement and understanding between Trout, Brown and the bank, there are allegations the legal effect of which are that the written contract was not a sham within the meaning of the authorities cited, but was binding except in so far only as it showed that Brown was to construct and finish the house in the capacity of an independent contractor for the price of $15,000.

The alleged parol agreement bound Brown to construct the house according to the same plans and specifications as those stipulated in the written contract, and to employ labor and purchase materials therefor as stipulated in the written contract. According to Brown's pleading the only difference between the written contract and the prior parol agreement between him and Trout was that by the terms of the latter agreement Brown was not made an independent contractor as in the written contract, but was made the agent of Trout for him and on his account to incur the necessary expenses for the construction of the house, and to receive for his services in so doing a commission of 10 per cent. of the entire cost, instead of the contract price stipulated in the written contract. Following allegations of the terms of the prior parol agreement there were further allegations that at the time plaintiff accepted the assignment of the mechanic's lien contract, its officers and agents knew of the parol agreement and accepted the same "with the understanding and agreement between all of said three groups of parties that it was, but the means of obtaining credit with the property of L. E. Trout and wife as security, and did not in fact represent the agreement of the parties to it, the true consideration supporting it not being stated therein, and that as a result of all of which said instrument as between L. E. Trout, Ruby Trout, and Robert H. Brown and Wichita State Bank & Trust Company inter se is invalid, inoperative, void, and unenforceable and should be so declared by decree of this court as between said parties, although said instrument as to materialmen, laborers, artisans, and subcontractors is valid and subsisting and enures to the benefit of all parties performing labor, furnishing material or doing subcontract work upon said premises between all of whom the $15,000 lien created by it should be prorated upon a ratable basis based upon the value of the labor and for materials going into such improvements." And in his alternative plea there was a prayer that Brown be given credit for the proceeds arising from the foreclosure of liens of the defendants referred to in those allegations on any indebtedness that might be established against him in favor of the bank or Trout.

As we understand it, the rule announced by the authorities cited above applies only when the written contract sought to be avoided by parol proof of a prior agreement at variance therewith is a sham in its entirety, and not merely that some of its terms are not in accord with the prior parol agreement, while the validity of other material parts of the agreement are not challenged. In the case at bar, Brown's agreement stated in the mechanic's lien contract to construct the building was a substantial part of the contract, as much so as was the other stipulation to the effect that he was to receive $15,-

000 as a consideration for furnishing the material and labor and completing the house. To hold that by parol testimony Brown could avoid the mechanic's lien contract in its entirety by showing a parol agreement at variance with and contradictory of the stipulation in the written agreement that the consideration he was to receive was $15,000 as the contract price of the entire work and was to furnish the labor and material therefor, and leave unchallenged the binding effect of other material stipulations in the contract would be an obvious violation of the parol evidence rule, and especially so in view of specific allegations in his pleadings noted above, making the mechanic's lien contract valid and binding as to all other persons who might furnish labor or material in reliance thereon. Henry v. Phillips, 105 Tex. 459, 151 S. W. 533; 2 Williston on Contracts, § 631.

Trout and wife have made no complaint of the judgment rendered against them in favor of the bank and for foreclosure of the mechanic's lien, nor do they or the plaintiff bank complain of the decree of foreclosure in favor of Buell Lumber & Manufacturing Company for the sum of $364 to participate with the plaintiff pro rata in the proceeds of a foreclosure sale.

■■ Brown is in no position to claim a mechanic's lien either under the alleged prior parol agreement for the building of the house on a cost plus 10 per cent. commission basis, or under the written mechanic's lien contract, since he did not finish the building in accordance with either of those contracts, but voluntarily abandoned the construction before it was finished by and with the consent of Trout and wife. Nor did he show any right of lien for services performed by him on a quantum meruit basis, since there is no count in his pleadings for that relief, and, furthermore, the proof showed and the court found that Trout paid him $2,112.44, which was not used in constructing the house.

■ The parol agreement which Brown alleged was made between him and Trout prior to the execution of the written contract was the only evidence offered to show that Trout and wife were liable for the debts incurred by Brown in favor of the other defendants for material and labor; and since that testimony was inadmissible and incompetent to show such parol agreement, the court erred in rendering judgment in favor of those defendants against Trout and wife. And those defendants have made no complaint of the refusal of the court to decree a mechanic's lien in their favor for the debts which they sought to establish.

Accordingly, judgment is here now rendered as follows. The judgment of the trial court dismissing the suit of defendants Texas Brick & Tile Company, Edward Bennenburg, and George Mobley, without prejudice, on their disclaimer, and also dismissing the suit by defendant H. H. Hyer, without prejudice, is affirmed, and in this connection it is to be noted that the defendants hereinafter referred to do not include the defendants just mentioned.

The judgment rendered in favor of the plaintiff bank against Trout and wife for the debt sued for and foreclosing the mechanic's lien against the property in controversy and also in favor of the Buell Lumber & Manufacturing Company, fixing and foreclosing a furnisher's lien on the same property for the sum of $364, with interest from the date of the judgment of the trial court, to wit, August 29, 1928, said foreclosure to be on a pro rata basis with the foreclosure in favor of plaintiff, is affirmed, and the two foreclosures just mentioned are hereby decreed to be against all other defendants in the suit to the exclusion of any and all claims of liens asserted by them.

The personal judgment rendered in favor of the Buell Lumber & Manufacturing Company against the defendant Robert H. Brown for the sum of $2,127.15 is affirmed.

The personal judgments rendered against the defendant Trout in favor of the defendants Panhandle Refining Company, J. W. Stephens Roofing & Tile Corporation, John Oechsner Electric Company, F. E. Shoop, J. F. Nunndo, H. E. Girdlestone, Lewis-Hager Sheet Metal Works, Inc., Paul Woodward, Harry L. Ayres, and Felix Young Ross, partners operating under the firm name of Wichita Wire & Iron Company, are all reversed and judgment is here rendered that each and all of said defendants take nothing of said L. E. Trout for the respective debts sued for. And the judgment of the trial court denying all of those parties any lien upon the property in controversy is affirmed.

The judgment rendered in favor of the defendant Robert H. Brown against the defendant L. E. Trout is reversed in its entirety and judgment is here rendered that said Brown take nothing of the defendant Trout under and by virtue either of the written mechanic's lien or by virtue of the alleged parol agreement antedating said written contract as set out in Brown's pleadings.

But since the record shows that the construction work by Brown was abandoned with the consent of Trout before the house was completed, it is reasonably probable that Brown upon proper pleadings would be entitled to recover the reasonable value of his services rendered before such abandonment, to be offset against any claim of Trout for any money furnished by him to Brown, and not used in the construction work. It is also reasonably probable that the other defendants mentioned above, who are denied the right of personal judgment against Trout for material and labor furnished to Brown, may have a right of recovery for those debts

against Brown upon proper pleadings filed for that relief. It is therefore ordered that this cause be remanded to the trial court for a determination of the issues last mentioned, but for no other purpose, and the personal judgment in favor of Trout against Brown for money advanced and not so used, is reversed, in order that the rights of the respective parties as to those issues may be properly adjusted.

The costs of this appeal will be taxed, one half against the defendant Brown and the other half against the several other defendants mentioned above, who are denied any recovery for personal judgment against defendant Trout, share and share alike.

### On Motion for Rehearing.

The uncontroverted proof showed that the work on the building was stopped upon request of L. E. Trout, without objection on the part of Brown, and in that sense, but in no other, did we intend to hold, as stated in the opinion on original hearing, that Brown voluntarily abandoned the construction of the building before it was finished.

We conclude further that Trout's plea of homestead was not available against the claims of any of the other parties to the suit, since the uncontroverted proof was that while the building in controversy was intended by Trout to be his place of residence and homestead when constructed, yet the steps so taken by him were his first overt acts looking to the establishment of the property as a homestead, and they were not sufficient to impress it with the homestead exemption, under the following authorities: West End Town Co. v. Grigg, 93 Tex. 451, 56 S. W. 49; Cobb v. Collins, 51 Tex. Civ. App. 63, 111 S. W. 760.

With the additions noted above to our opinion on original hearing, the motions for rehearing presented by appellant Robert H. Brown and by appellee J. F. Nunn are both overruled.