**CARSTENS et al. v. LANDRUM et ux.**
(No. 1249—5217.)

Commission of Appeals of Texas, Section A.
June 12, 1929.

S. Engelking, of San Antonio, for plaintiffs in error.

Dwyer & Russell, of San Antonio, for defendants in error.

HARVEY, P. J. This suit was originally brought by Chas. G. Carstens against J. M. Landrum and wife on a promissory note for $2,000 and to foreclose a deed of trust lien on a tract of 200 acres of land in Atascosa county. Carstens died pending suit, and his executors have been duly made parties plaintiff. The note and the deed of trust securing it bear date April 12, 1918, but were in fact executed on April 15, 1918. The deed of trust was duly signed and acknowledged by both Landrum and his wife on the last-named date,

and was delivered at the same time. The note represents a loan made on that date to Landrum by Carstens. The deed of trust contains the following recitals:

"And the parties of the first part hereby declare that the property hereinbefore mentioned and conveyed to said trustee forms no part of any property by them owned, used, or claimed as exempted from forced sale under the laws of the State of Texas, and disclaim and renounce all and every claim thereto under any such law or laws, and hereby designate the following described property, towit: [Here follows description of three lots, numbered 1, 2 and 3, in the city of San Antonio, which lots are referred to in the record as the Corpus Christi road property]; and parties of the first part hereby declare that they actually now reside upon the above described property, and that they have abandoned the 200 acres hereinbefore described, as a homestead, having leased the same out, and never intend to again use the same as their homestead, and that said above described property, that is, said Lots 1, 2 and 3, is now actually used, occupied and intended to be used in the future as and for their homestead, and as constituting all property owned, used or claimed by them as exempt under said laws."

Prior to the execution of the note and deed of trust, Landrum had negotiated with Walter F. Neal, the owner, for the purchase of the Corpus Christi road lots, upon which stood a dwelling house and other improvements suitable for a family home. At the same time and place that the note and deed of trust were executed, and the money was received thereon, by Landrum and his wife, Neal executed a deed to Landrum for the Corpus Christi road lots. The consideration for this deed was $1,000 cash, and $1,650 evidenced by vendor's lien notes executed by Landrum, and the assumption by the latter of an outstanding lien debt of $850 against the lots. From the money received on the note to Carstens, and in the same transaction, Landrum paid the cash consideration of $1,000 to Neal for the above deed.

Although the evidence is sharply conflicting in material respects, the verdict of the jury and the implications arising from the judgment of the trial court establish the following facts, for which there is evidence in the record to support:

J. M. Landrum is a married man, and for some 20 years prior to September, 1917, he and his family resided upon and used the 200-acre farm in controversy as their home. He owned the farm and did not own any other real estate. In the month mentioned, his family consisted of himself, his wife, six minor girls, and a little boy about 4 years of age. About September, 1917, it was planned by Landrum and his wife that the latter should take the six minor girls with her to

San Antonio and live there temporarily, for the purpose of sending the three youngest girls to school and putting the three older ones to work in some remunerative employment to help support the family. In pursuit of this plan, Mrs. Landrum and the girls moved to San Antonio, in the month named, and lived in a rented house on Roosevelt avenue. Landrum moved most of the furniture and household effects from the dwelling on the farm to San Antonio, for the use of Mrs. Landrum and the girls. About the 1st of November, 1917, Mrs. Landrum and the girls moved from the house on Roosevelt avenue to a rented house on Pardee street in San Antonio, where they continued to live until some time in May, 1918. The three youngest girls went to school and the other three earned wages. Landrum remained on the farm. About the time his wife and the girls moved to San Antonio, he rented 100 acres of the farm to one Hurley for the year 1918. Sixty acres of the balance he rented to his married son; the remaining 40 acres were reserved by Landrum for his own use. After Mrs. Landrum and the girls left, he and his little boy lived in the dwelling house on the farm, with the family of his married son, and continued to do so until long after April 15, 1918. Landrum cultivated, during the year 1918, the 40 acres which he had reserved from lease. He visited his wife and the girls in San Antonio from time to time as his work on the farm permitted. Neither he nor his wife, prior to the year 1922, ever intended to abandon the farm as their homestead. It was intended by both that Mrs. Landrum's stay in San Antonio would be only temporary, and that she would return and resume her residence on the farm along with her husband at the end of her stay in the city. Prior to the execution of the deed of trust, neither of them had ever expressed to any one an intention to abandon the farm as their home and to make their home elsewhere. The declarations contained in the deed of trust, which have been quoted, are the only statements made by either of them to the effect that they had abandoned the farm as a home, and intended the Corpus Christi property as their home. Prior to the execution of the deed of trust, no member of the family had ever used or occupied the Corpus Christi road property as a home, or for any other purpose; and as a matter of fact neither Landrum nor his wife ever, at any time, really intended to make said property the family home. About a month after the deed of trust was executed, Mrs. Landrum and the girls moved from the rented house on Pardee street to the place on Corpus Christi road. They lived at the latter place until about January, 1919, when they returned to the farm and lived there until 1922, when the whole family moved to San Antonio.

■ In the present suit Landrum and wife pleaded their homestead rights in the farm as invalidating the deed of trust in controversy. The executors of Carstens pleaded an estoppel against the assertion of said homestead rights, basing such plea on the recitals of the deed of trust which have been quoted. The case was tried to a jury, and verdict was rendered on special issues. Judgment was entered for the plaintiffs in error against Landrum for the amount due on the note, but denying a foreclosure of the deed of trust lien. The judgment was affirmed by the Court of Civil Appeals. 5 S.W.(2d) 208.

■ In the transaction of the making of the loan to Landrum, Carstens acted through his agent Wurzbach, who made the loan in reliance on the recitals of the deed of trust hereinabove quoted. Although the jury, in answer to a special issue, found that Wurzbach was not the agent of Carstens, there is no evidence to support such finding, and the uncontroverted facts show conclusively that he was. Under these circumstances the jury finding in this respect will be disregarded.

■ The controlling question to be considered is whether the said recitals of the deed of trust raise an estoppel against Landrum and wife. It is no longer an open question in this state that, where the tangible facts respecting two places are such that the homestead character will attach to either, to the exclusion of the other, according as the husband and wife intend, a declaration by the spouses of their intentions in this respect may estop them from disputing the truth of the declaration. Parrish v. Hawes, 95 Tex. 185, 66 S. W. 209.

It becomes necessary, therefore, to consider the tangible facts relating to the Atascosa county farm and the Corpus Christi road property as those facts existed at the time the transaction occurred in which the deed of trust in question and the deed from Neal to Landrum were executed. Discarding from consideration the real intentions which Landrum and wife had in mind, it could not be said that the use and occupation of the farm were of such a nature as to show conclusively that the farm was in law and in fact their home when that transaction took place. Whether it was or not depended upon their real intentions which they could change at will, and which nobody could know but themselves. In the same transaction in which they declared an abandonment of the farm as a home, they acquired a new place, suitably improved, which they declared in effect was their home and was intended to be used as such. In view of the ambiguous circumstances under which the farm was being used and occupied by a part of the family, and of the fact that within a short time Mrs. Landrum and the girls moved to and resided upon the Corpus Christi road property, there can be no doubt that the latter place would be treated as having become the family home, and protected as such, at the very time of said trans-

action, if the real intentions of Landrum and his wife had corresponded to their declarations of intention as contained in the deed of trust. Gardner v. Douglass, 64 Tex. 76; Cameron v. Gebhard, 85 Tex. 610, 22 S. W. 1033, 34 Am. St. Rep. 832.

We are mindful that it has repeatedly been held that, so long as one place is actually occupied as a home, another place cannot be impressed with the homestead character by an intention to use it as a home in the future. O'Brien v. Woeltz, 94 Tex. 154, 58 S. W. 943, 59 S. W. 535, 86 Am. St. Rep. 829; Archibald v. Jacobs, 69 Tex. 251, 6 S. W. 177; Johnston v. Martin, 81 Tex. 18, 16 S. W. 550; Pierce v. Langston (Tex. Civ. App.) 193 S. W. 745. But in none of these decisions was the occupancy of the first place maintained under such ambiguous circumstances as in the present instance. In the light of the attending circumstances, the occupancy of the farm by Landrum and his little boy was palpably ambiguous in respect of the homestead intention, and it is not thought that the above-cited decisions apply.

We conclude that, under the facts as we have stated them, the declarations of Landrum and wife contained in the deed of trust, with respect to which of the two places was intended as their home, raise an estoppel against a denial of the truth of the declarations in so far as the deed of trust lien is concerned.

We recommend that the judgment of the trial court and that of the Court of Civil Appeals affirming same be reversed, and that judgment be here rendered for the plaintiffs in error against Landrum on the note, and for foreclosure of the deed of trust lien.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both reversed, and judgment rendered for the plaintiffs in error, as recommended by the Commission of Appeals.